# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

*In re Marriage of Dea*, 2013 IL App (1st) 122213

---

| | |
|---|---|
| Appellate Court Caption | *In re* MARRIAGE OF DANA DEA, Petitioner-Appellant, and PAUL DEA, Respondent-Appellee. |
| District & No. | First District, First Division<br>Docket No. 1-12-2213 |
| Filed | November 12, 2013 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Where the trial court abused its discretion in not considering respondent's nontaxable social security disability payments in determining a maintenance award for him, the trial court's judgment was reversed and the cause was remanded for further proceedings at which all of respondent's social security disability payments, taxable and nontaxable, should be considered along with petitioner's income compared to her expenses in determining whether maintenance would be appropriate. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 08-D-8694; the Hon. Kathleen Kennedy, Judge, presiding. |
| Judgment | Reversed and remanded with directions. |

| Counsel on Appeal | Klein, Thorpe & Jenkins, Ltd., of Chicago (Allen Wall, of counsel), for appellant. |
|---|---|
| | Tristano & Tristano, Ltd., of Hickory Hills (Michael T. Tristano, of counsel), for appellee. |
| Panel | JUSTICE CUNNINGHAM delivered the judgment of the court, with opinion. |
| | Presiding Justice Connors and Justice Delort concurred in the judgment and opinion. |

## OPINION

¶ 1     This appeal arises from an April 3, 2012 order entered by the circuit court of Cook County which granted a judgment of dissolution of marriage for petitioner-appellant Dana Dea (Dana) and respondent-appellee Paul Dea (Paul), and awarded Paul permanent maintenance in the amount of $1,600 per month; and a June 19, 2012 order entered by the circuit court which denied Dana's petition for modification of judgment. On appeal, Dana argues that: (1) the trial court abused its discretion because it failed to consider Paul's nontaxable social security disability payments as part of his income for the purpose of determining the maintenance award; (2) the trial court's maintenance award was an abuse of discretion because it causes Dana's monthly expenses to significantly exceed her net monthly income; and (3) the trial court's maintenance award was an abuse of discretion considering the age of the parties and that Paul has significantly greater retirement assets than Dana. For the following reasons, we reverse the judgment of the circuit court of Cook County and remand the matter for further proceedings.

¶ 2                         BACKGROUND

¶ 3     On April 22, 1989, Dana and Paul were lawfully married. On September 10, 2008, Dana filed a petition for dissolution of marriage in the circuit court of Cook County. On September 19, 2008, Paul filed an answer and counterpetition for dissolution of marriage. Subsequently, the court conducted a bench trial on the matters raised in the petition and counterpetition. On April 3, 2012, the court entered an order which granted a judgment of dissolution of marriage. Additionally, the trial court awarded Paul permanent maintenance in the amount of $1,600 per month.

¶ 4     The following facts were presented in the trial court's April 3, 2012 order. The parties had no biological children. However, the parties adopted two children, both of whom were

emancipated at the time of the dissolution proceeding. Dana and Paul lived together as husband and wife from the time of their marriage until they separated in 2005. In 1990 or 1991, they purchased the marital residence from Dana's mother for $80,000. At the time of the dissolution of the marriage, Dana was 58 years old. During the marriage, she worked as a waitress and cared for the parties' children. Around 2000, Dana began working in the field of information technology (IT). She has been working in IT full-time since 2001. In 2006, she began working in IT at a law firm. Dana was still employed at the law firm at the time the marriage was dissolved. In 2007, Dana paid off the second mortgage on the marital residence, and the parties paid off the first mortgage on the residence soon after. At the time of the trial court's order, there was no mortgage on the marital residence. Dana initially earned a $63,000 base salary from her IT work, and earned a $78,000 base salary at the time the marriage was dissolved. For the period ending December 31, 2010, Dana had gross year-to-date earnings of $83,642.63. In October 2010, Dana purchased a condominium in which she currently resides for $185,000. She had $23,000 in nonmarital assets, as a result of an inheritance from her mother.

¶ 5    At the time the marriage was dissolved, Paul was 59 years old. He had worked as a truck driver for Amoco BP until 2005. Paul suffers from multiple sclerosis and clinical depression. He has been awarded disability benefits by the Social Security Administration. In 2010, documents submitted by Paul and relied upon by the circuit court showed Paul's adjusted gross income to be $20,685. At the time of the circuit court's order, he resided in the marital residence in Worth, Illinois, and had exclusive possession of the residence pursuant to an agreed order entered in 2009. The 2009 order mandated that Dana pay the utilities, heat, electricity, water, sewer and trash for the residence. By the time of the order, out of which this appeal arose was entered, Paul had nonmarital assets of $128,393 from premarital retirement contributions.

¶ 6    The trial court made numerous additional findings based on the parties' assets. The court found that Dana had an American Funds 401(k) profit-sharing plan in her name valued at $31,422. Paul had a BP retirement accumulation plan in his name valued at $324,286, of which $216,191 was marital and $108,095 was nonmarital. Paul also had a BP employee savings plan valued at $60,897, of which $40,599 was marital and $20,298 was nonmarital. Also, the court charged Dana $12,500 against her share of the marital assets for dissipation. Paul was charged $5,000 against his share of the marital assets for dissipation.

¶ 7    The trial court then made findings regarding maintenance. The court found that Paul has no present or future ability to earn income and he cannot be rehabilitated so as to support himself through appropriate employment. The court determined that Dana had monthly living expenses of $4,853.09, and Paul's monthly living expenses were $3,800. Further, the trial court found that Dana's financial status had improved through her efforts of self-sufficiency, while Paul's financial status declined due to his disability. The trial court ruled that without a maintenance award, Paul would be unable to meet his needs considering the standard of living established during the marriage. Thus, in the trial court's April 3, 2012 order, the court awarded Paul permanent maintenance in the amount of $1,600 per month.

¶ 8    Each party had filed a disclosure statement for the year 2010 as required. The trial court relied upon the disclosure statements in its ruling. On Paul's disclosure statement he listed

$1,500 monthly income from pension and retirement payments, $1,946 monthly income from social security disability payments, and $41 in deductions for a total net monthly income of $3,405. Paul listed his gross annual income as of November 4, 2010, as $37,939. Paul's United States individual income tax return for the year 2010 listed $18,000 in income from pensions and annuities. It also listed $24,510 in income from social security disability payments. The taxable amount of the social security disability payments was $2,647. His adjusted gross income was listed as $20,685. Dana's disclosure statement listed $6,433 monthly income from wages, $250 monthly income from overtime wages, and $1,945 in deductions for a total net monthly income of $4,738. Dana's United States individual income tax return for the year 2010, showed an adjusted gross income of $76,621.

¶ 9       Shortly after the trial court entered its April 3, 2012 order, Dana filed a "petition for modification of judgment ***, pursuant to section 2-1203 of the Illinois Code of Civil Procedure and to abate stay/enforcement of the maintenance award pending sale of the marital residence" (motion for modification of judgment).[1] On June 19, 2012, the trial court denied Dana's motion for modification of judgment. On July 18, 2012, Dana filed a timely notice of appeal pursuant to Illinois Supreme Court Rule 303 (eff. May 30, 2008). Therefore, this court has jurisdiction to consider Dana's arguments on appeal.

¶ 10                                    ANALYSIS

¶ 11      On appeal, we determine the following issues: (1) whether the trial court abused its discretion because it failed to consider Paul's nontaxable social security disability payments for purposes of meeting his living expenses and establishing the maintenance award; (2) whether the trial court's maintenance award was an abuse of discretion because it causes Dana's monthly expenses to significantly exceed her net monthly income; and (3) whether the trial court's maintenance award was an abuse of discretion notwithstanding Paul's disability, considering the age of the parties and that Paul has significantly greater retirement and nonmarital assets than Dana.

¶ 12      We first determine whether the trial court abused its discretion because it failed to consider Paul's nontaxable social security disability payments in determining what assets are available to meet his living expenses. That consideration necessarily impacts the maintenance award.

¶ 13      Dana argues that the trial court abused its discretion because in determining the amount of Paul's maintenance award, it failed to consider that Paul received $24,510 in social security disability payments in 2010, the year that the court used to calculate the respective financial positions of the parties. Dana points out that the trial court only considered the taxable amount of Paul's social security disability payments ($2,647) that were included in his adjusted gross income for purposes of calculating the amount of money available to meet his living expenses. Dana contends that Illinois law allows the trial court to consider Paul's nontaxable social security disability payments in determining a maintenance award. She

_____

[1]Following careful review of the record, this court notes that the motion for modification of judgment is not included in the record.

argues that the trial court found that Paul's adjusted gross income for 2010 was $20,685, but the court failed to acknowledge his nontaxable social security disability payments. Dana points out that Paul's adjusted gross income for 2010 consisted of $18,000 from pensions and annuities, $2,647 in taxable social security disability payments, and $38 from taxable interest. Dana asserts that when the full amount of Paul's social security disability payments ($24,510) are included with the other income which he receives from pensions and annuities ($18,000), his total income for the year 2010 is $42,510, not $20,685, as the trial court found. Accordingly, the trial court's finding that Paul's adjusted gross income was $20,685, and using that figure to determine maintenance, results in approximately a 100% discount of Paul's income or the funds available to him to meet his expenses. Since this is a serious error in calculation, she suggests that the court's maintenance award which flows from this finding is also erroneous.

¶ 14        Additionally, Dana points out that her argument finds support in Paul's disclosure statement which he filed with the court in 2010. That statement correctly shows a net monthly income of $3,405 consisting of $1,500 monthly income from pension and retirement payments, $1,946 monthly income from social security disability payments, and $41 in deductions. Therefore, Dana contends that according to his own 2010 disclosure statement, Paul's income over a 12-month period totals $40,860. Dana highlights that the trial court found Paul's monthly expenses to be $3,800. She asserts that based on the net monthly income of $3,405 as confirmed by his disclosure statement, Paul requires only $395 additional income per month to meet his monthly expenses which the trial court found to be $3,800. Thus, Dana argues that the trial court's award of maintenance in the amount of $1,600 per month was an abuse of discretion. Dana's argument may be summarized as requiring the trial court to consider all of the money which Paul receives on a monthly basis including social security disability payments, both taxable and nontaxable, in determining whether he has sufficient funds to meet his living expenses. She urges that this should also be the basis of determining an appropriate maintenance award.

¶ 15        In response, Paul argues that the trial court did not abuse its discretion in awarding him maintenance of $1,600 per month. Paul contends that the trial court correctly stated that his adjusted gross income for 2010 was $20,685, but offers contradictory arguments as to the consideration of his nontaxable social security disability payments. In his brief on appeal, he claims that the trial court considered his nontaxable social security disability payments in determining the amount of the maintenance award, but correctly excluded those payments from calculating his adjusted gross income because they are nontaxable. Thus, Paul contends that Dana's argument is meritless unless she can show that the trial court *did not* consider his nontaxable social security disability payments. However, at oral argument Paul argued that since almost all of his social security disability payments were tax exempt, they were correctly excluded from his adjusted gross income and therefore from consideration in determining a maintenance award. In response to a question, Paul's counsel confirmed the argument that any nontaxable disability payments should be excluded from consideration in determining how much money is available to Paul to meet his living expenses. These arguments are inconsistent and neither argument supports the trial court's maintenance award.

¶ 16     Further, Paul argues that the maintenance award is based on the trial court's recognition that he lacks the ability to acquire additional retirement assets. He asserts that Dana is still employed and, as of the time of the trial court's order, Dana had seven more years of employment to supplement her retirement savings. He speculates that she could work past retirement age if she chose to do so. Paul claims the trial court considered his nontaxable social security disability payments, or it would have ordered a much greater award than $1,600 per month because the court would have found his only source of income to be withdrawals from his retirement assets. Therefore, Paul concludes that the trial court did not abuse its discretion in awarding him permanent maintenance in the amount of $1,600 per month.

¶ 17     "Maintenance is designed to be rehabilitative in nature and to allow the dependent spouse to become financially independent." *In re Marriage of Murphy*, 359 Ill. App. 3d 289, 303 (2005). It is appropriate to award permanent maintenance when it is evident that the recipient spouse is unemployable or employable only at an income that is substantially lower than the previous standard of living. *Id.* Section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a) (West 2010)) requires that the court consider the following factors when determining whether to award maintenance: the income and property of each party; the needs of each party; the present and future earning capacity of each party; any impairment of the present and future earning capacity of the party seeking maintenance due to that party devoting time to domestic duties; the time and support necessary to enable the party seeking maintenance to acquire appropriate education, training, and employment; the standard of living established during the marriage; the duration of the marriage; the age and the physical and emotional condition of both parties; contributions and services by the party seeking maintenance to the education, training, career or career potential, or license of the other spouse; any valid agreement of the parties; and any other factor the court finds just and equitable. 750 ILCS 5/504(a) (West 2010).

¶ 18     In awarding maintenance, the trial court is not limited to the factors listed in section 504(a) of the Act, and the court has wide latitude in considering what factors should be used in determining reasonable needs. *Murphy*, 359 Ill. App. 3d at 304. "When determining the amount and duration of maintenance, the trial court must balance the ability of the spouse to support him or herself in some approximation to the standard of living he or she enjoyed during the marriage." *Id.* Absent an abuse of discretion, the trial court's determination as to an award of maintenance will not be disturbed. *In re Marriage of Brankin*, 2012 IL App (2d) 110203, ¶ 10. A trial court abuses its discretion when its ruling is "arbitrary, fanciful, or unreasonable, or where no reasonable person would take the view adopted by the trial court." *In re A.W.*, 397 Ill. App. 3d 868, 873 (2010).

¶ 19     It is well established in Illinois that social security benefits cannot be divided directly or used as an offset during state dissolution proceedings. *In re Marriage of Rogers*, 352 Ill. App. 3d 896, 898 (2004). However, this court has held that such a restriction does not apply to maintenance awards, and social security benefits may be considered in determining maintenance awards. *Id.* at 899; see *In re Marriage of Wojcik*, 362 Ill. App. 3d 144, 164-65 (2005).

¶ 20     In this case, Dana argues that the trial court abused its discretion because in determining

-6-

the maintenance award, it failed to consider that Paul received $24,510 in social security disability payments. We agree. In reality, given the nontaxable nature of the payments he receives, the actual money available to Paul for his living expenses is actually more than the same figure in taxable dollars. In the trial court's 12-page written order, although the court acknowledges that Paul receives social security disability payments, the court made no other findings regarding Paul's nontaxable social security disability payments, nor how they may be a factor in meeting his necessary living expenses. Paul's federal income tax return recognizes that in 2010 he received $24,510 in social security disability payments; much of that nontaxable. Yet, the trial court never mentions nor discusses this money in connection with its analysis of Paul's living expenses or the money available to meet those expenses. Notably, the trial court took care to state that Paul's adjusted gross income for 2010 was $20,685. The court did not, however, mention Paul's nontaxable social security disability payments as an additional source of money available to him. This omission is significant. The $24,510 which Paul received in social security disability payments is significantly greater than the adjusted gross income which the court recognized and relied upon in awarding permanent maintenance to Paul. When the full amount of Paul's social security disability payments are combined with his income from pension and annuities ($18,000), he has a total of $42,510 available to him for his living expenses in the 2010 tax year, not $20,685, as the trial court outlined in its order. A person with yearly income of $42,510 is in a significantly different financial position than a person with an income of $20,685. Therefore, it is important that the trial court consider the actual monetary value of Paul's social security disability payments to meet his living expenses when determining the appropriate maintenance award.

¶ 21    Paul argues that the trial court correctly excluded his social security disability payments from consideration in determining how much money is available to meet his living expenses since the payments were not taxable. However, that argument begs the question of whether that money is available to him for his living expenses regardless of whether it is taxable. If the answer is yes, then the trial court must consider that money in its maintenance award analysis. Moreover, it is arguable that the social security disability payments are a more valuable source of funds for Paul because the payments *are not* taxable. The nontaxable nature of the payments means that the actual dollars which Paul receives from these payments is greater than what he would receive from other sources that *are* taxable.

¶ 22    While the trial court was not required to mention every single factor it considered in its order granting permanent maintenance, given the significant positive impact on Paul's financial circumstances when the nontaxable social security disability payments are added to the dollars available to meet his living expenses, the trial court should have addressed the payments with clarity. It is clear that the trial court did not consider Paul's nontaxable social security disability payments in its analysis of money available to meet Paul's living expenses. Accordingly, since the trial court failed to consider the amount of Paul's nontaxable social security disability payments, the court's maintenance award was unreasonable. Thus, we hold that the trial court abused its discretion in excluding Paul's nontaxable social security disability payments from consideration in determining the amount of money available to meet his needs and in determining a maintenance award.

¶ 23    We next determine whether the trial court's maintenance award was an abuse of discretion because it causes Dana's monthly expenses to significantly exceed her net monthly income.

¶ 24    Dana argues that the trial court abused its discretion because the maintenance award causes her monthly expenses to significantly exceed her net monthly income and Paul does not need the award to meet his monthly expenses. Specifically, Dana points out that Paul's disclosure statement upon which the trial court relied listed net monthly income of $3,405 for 2010. The trial court found that his monthly expenses were $3,800. Therefore, Paul requires only an additional amount of $395 per month to meet his monthly expenses. Dana points out that the maintenance award of $1,600 per month gives Paul a net monthly income of $5,005, which is $1,205 more than the trial court found that he needs. Dana contends that her current monthly expenses without the maintenance award are $4,459,[2] while her net monthly income is $4,738. When the maintenance award is added, her monthly expenses increase to $6,059 while her net monthly income remains at $4,738. Dana argues that this result is inequitable and is an abuse of discretion by the trial court.

¶ 25    Paul argues that the trial court's maintenance award was not an abuse of discretion because Paul needs the award and Dana can afford to pay the award while maintaining an equal standard of living as that enjoyed during the marriage. Paul points out that in 2006, Dana had a base salary of $63,000, and in 2011 she had a base salary of $78,000. Paul speculates that her salary will continue to increase at this rate. Also, Paul argues that Dana lives an extravagant lifestyle. Paul asserts that Dana undertook additional expenses by purchasing a condominium which was more expensive and has higher taxes and utilities than the marital residence. Paul further argues that Dana overstated her federal and state taxes, and understated her income. Paul claims that Dana had not claimed certain tax deductions, which he believes she is entitled to, and if she took those deductions, an additional $1,296.89 per month would be added to Dana's income. Additionally, Paul argues that the trial court's maintenance award was proper because he should not be required to deplete all his assets for self-support when Dana has the financial ability to provide maintenance while meeting her own needs. Paul claims that Dana's argument would require him to exhaust his retirement savings in order to offset her obligation to pay maintenance. Notwithstanding the numbers offered by Dana in support of her argument, Paul argues that Dana would be able to pay the maintenance award of $1,600 per month and still maintain her lifestyle.

¶ 26    In response, Dana points out that Paul's calculations and argument are based entirely on speculation and conjecture. According to Dana, Paul presents no evidence whatsoever regarding her current mortgage, and he misstates the amount of real estate tax obligation on her condominium. Further, Dana asserts that even if this court were to accept Paul's speculative argument that she is able to get an additional $1,296.89 in monthly income, she

---

[2]In 2010, the year on which the trial court based its findings, Dana's disclosure statement showed her monthly expenses to be $4,853.09. This included the court-ordered payments for the utilities, heat, electricity, water, sewer and trash for the marital residence in which Paul resided. According to Dana, the marital residence has been sold and she no longer makes payments for the marital residence.

-8-

would still be $303 short of being able to meet her own expenses and pay Paul $1,600 per month in maintenance. Thus, Dana argues that the trial court's maintenance award was an abuse of discretion.

¶ 27 While section 504(a) of the Act sets out certain factors as a guide for determining appropriate maintenance, the court must also be guided by reason and reality. It is sometimes not possible for each of the parties, individually, to maintain exactly the standard of living which they enjoyed collectively during the marriage. The amount of income which each party has to meet his basic living expenses is an important factor for the court to consider.

¶ 28 "[T]he ability of the maintenance-paying spouse to contribute to the other's support can be properly determined by considering both current and future ability to pay ongoing maintenance." *In re Marriage of Lichtenauer*, 408 Ill. App. 3d 1075, 1088 (2011). The court must consider not only whether one party needs maintenance, but also whether the other party has the ability to pay maintenance. *In re Marriage of Mantei*, 222 Ill. App. 3d 933, 938 (1991).

¶ 29 Paul's arguments regarding Dana's being able to increase her income are largely speculative, conjectural and unsupported by the record. There is nothing in the record to suggest that Dana has additional income over what was found by the trial court. In its order, the trial court found that Paul's monthly expenses were $3,800. According to his disclosure statement, his net monthly income was $3,405. Thus, there is a difference of $395 between his monthly income and expenses. However, the trial court awarded him maintenance in the amount of $1,600 per month. This award would give Paul a net monthly income of $5,005, which is $1,205 more than the court found his monthly expenses to be. In its order, the trial court does not explain why Paul requires a maintenance award that would put his net monthly income at $5,005 when the court found his monthly expenses to be only $3,800. The court may very well have had valid reasons for setting the maintenance award at $1,600 per month. However, it is not revealed in the court's order or in the record. When the figures are tested, Dana's argument that the maintenance award pushes her monthly expenses beyond her monthly income finds support in the record. There is no corresponding support in the record for awarding Paul maintenance significantly in excess of his stated monthly expenses. This is especially so since the maintenance award pushes Dana's obligation beyond her monthly income. Accordingly, the award cannot be viewed as reasonable.

¶ 30 As previously discussed, when the maintenance award is included, Dana's monthly expenses are $6,059 and her net monthly income is $4,738. This means that according to the trial court's order, Dana is expected to spend $1,321 more than she takes in each month in order to comply with the court's maintenance award. This discrepancy is seemingly unreasonable especially since Paul only needs an additional $395 per month to meet the amount which the court found to be his monthly expenses. The trial court's order does not specify how Dana is expected to pay the maintenance award while meeting her own living expenses. Under these circumstances, Dana's ability to pay the award is a significant factor that must also be considered. For the reasons discussed, the trial court's award of this level of permanent maintenance was unreasonable. Accordingly, we hold that the trial court abused its discretion in awarding Paul permanent maintenance of $1,600 per month.

¶ 31    Finally, both parties present arguments regarding whether the trial court's maintenance award was an abuse of discretion considering the age of the parties and in light of Paul's significantly greater retirement and nonmarital assets than those of Dana. We note that both parties make speculative arguments based on their own calculations regarding the amount of retirement assets each will have in the future. Although we have considered these arguments, we have determined that the trial court's judgment is reversed based on the two issues that we have already discussed. Thus, the parties' additional arguments have no effect on the resolution of this case. Therefore, we need not address the specifics of the parties' arguments regarding the adjustment of Paul's maintenance award.

¶ 32    Accordingly, the judgment of the circuit court of Cook County is reversed. The matter is remanded to the circuit court with instructions to specifically consider *all* of Paul's 2010 social security disability payments, including nontaxable payments, in the amount of $24,510 in calculating how much money he has available to meet his living expenses. Additionally, the circuit court is instructed to consider the money available to Paul when compared to his expenses, and Dana's income when compared to her expenses, in determining an appropriate maintenance award, if any.

¶ 33    For the foregoing reasons, the judgment of the circuit court of Cook County is reversed and the matter is remanded for further proceedings consistent with this opinion.


¶ 34    Reversed and remanded with directions.