2022 IL App (2d) 200696-U
No. 2-20-0696
Order filed February 3, 2022

**NOTICE:** This order was filed under Supreme Court Rule 23(b) and is not precedent except in the limited circumstances allowed under Rule 23(e)(l).

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

| | | |
|---|---|---|
| *In re* MARRIAGE OF KEATON SMILEY, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 16-D-678 |
| SANDRA SMILEY, | ) ) | Honorable Robert E. Douglas, |
| Respondent-Appellee. | ) | Judge, Presiding. |

PRESIDING JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Schostok concurred in the judgment.

**ORDER**

¶ 1     *Held*:  The circuit court did not err as a matter of law or abuse its discretion in its award of maintenance. Therefore, we affirm.

¶ 2     Petitioner, Keaton Smiley, appeals from the circuit court's judgment awarding maintenance to respondent, Sandra Smiley. He argues that the circuit court either (1) made an error of law in applying the first factor of section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) ((750 ILCS 5/504(a)(1) (West Supp. 2017)) or (2) abused its discretion in its maintenance award. We disagree and affirm.

¶ 3                             I. BACKGROUND

¶ 4     We restate the facts of this case as set forth in Keaton's prior appeal. See *In re Marriage of Smiley*, 2019 IL App (2d) 180976-U. Keaton and Sandra were married on April 25, 2003. They had three children together and, one year prior to the marriage, Keaton adopted Sandra's child from a previous relationship. The parties resided together in Texas until their separation in 2008, when Sandra relocated with the children to Illinois. After an eight-year separation, on April 7, 2016, Keaton filed a petition for dissolution of marriage in Illinois.

¶ 5     A trial was held over two days in July 2018. Keaton testified that he was employed as an insurance premium auditor at CNA Insurance where he earned a base salary of $78,000 per year, plus a bonus based on his profitability. Including his bonus, he earned a gross income of $83,079 in 2017. Keaton had limited contact with the children during the parties' extended separation, in that he had only telephonic communication with the younger children and occasional in-person visitation in Texas with the oldest child. Commencing in 2017, Keaton began to travel to Illinois every other week to exercise parenting time in accordance with the recommendations of the guardian *ad litem*. Keaton withdrew $15,703.18 from his 401(k) in August 2017 after he ceased working for his former employer, Liberty Mutual Group. He testified that he withdrew the funds to pay for various obligations, including household expenses, child support, legal fees, and travel-related expenses to see the children in Illinois.

¶ 6     Sandra testified that she was living in a two-bedroom apartment in Carol Stream, Illinois with the minor children. She often slept on the couch because the children occupied both bedrooms. She worked "third shift," from 11 p.m. to 7:30 a.m., as a machine operator at Johnson Controls. Her base pay was approximately $33,000 in 2017, but she earned additional pay for overtime work and night shift premiums. She worked third shift so that she could drive her children to their extracurricular activities and spend time with them, and she voluntarily "put in" for

overtime to "keep up with [her] bills." She testified that she did not want to work third shift, but she did so in order to earn additional money. She could apply for the first shift at her job, where the hours would be from 7 a.m. to 3:30 p.m. Sandra's 2017 W-2 reflected that she earned $53,656.13 that year.

¶ 7    The circuit court entered a judgment for dissolution of marriage on August 19, 2018. It also issued a letter opinion explaining its decision, which was incorporated into the judgment. Pertaining to maintenance, the circuit court stated that it had considered the relevant statutory factors in section 504(a) of the Act, and it found that "[t]he property awarded to Sandra is not so substantial as to provide significant income for her to live on with the children," such that maintenance was appropriate. In setting the amount and duration of Keaton's maintenance obligation, the court found that Sandra's base salary was $33,156 per year, but it acknowledged that she earned "approximately $53,000" in 2017 because she received shift premiums for working the third shift. The court found that "Sandra is not required to work a third shift job [because] * * * it has her sleeping during much of the time when the children are awake." Regarding Keaton, the circuit court noted that his base salary was $78,358 per year, but that he earned "approximately $83,000" in 2017 when his bonus was included. Utilizing each party's base income, the circuit court ordered Keaton to pay guideline maintenance of $954.13 per month for 7.28 years. Using the income shares approach to calculating child support, the court also awarded Sandra $1,220.59 per month in child support. The judgment provided that the amount of maintenance and child support were to be "trued-up quarterly" based on the "actual earnings" of the parties. Finally, the court found that Keaton dissipated $15,703 and ordered him to pay Sandra half that amount, as well as ordered that the marital assets be divided equally.

¶ 8      Keaton appealed from the circuit court's ruling, arguing that the circuit court erred (1) in awarding maintenance without making specific factual findings required by statute; (2) determining the parties' incomes for maintenance and child support; and (3) finding that he dissipated $15,703 of marital assets. *Id.* ¶ 2. On the subject of maintenance, we held that the circuit court erred as a matter of law in failing to calculate guideline maintenance using the parties' gross annual incomes. *Id.* ¶ 19. We reversed and remanded "for a new hearing to determine Keaton's child support obligation using the gross incomes of the parties at the time of hearing, subject to any deviations, and to determine whether an award of maintenance is appropriate after consideration of 'the income and property of each party,' in addition to all other relevant factors in section 504(a) of the Act." *Id.* ¶ 20. We stated that on remand, the circuit court should be mindful of the statutory requirement to make specific factual findings for its reasons to award or decline to award maintenance, including references to all relevant factors in subsection (a). *Id.* Regarding child support calculations, we held that the circuit court did not err in declining to subtract from Keaton's net income his child support arrearage installment payments for an adult son from a prior relationship. *Id.* ¶ 24. We further held that the circuit court's dissipation finding was not against the manifest weight of the evidence. *Id.* ¶ 26. Last, we directed the circuit court to make specific factual findings regarding its property award. *Id.* ¶ 30.

¶ 9      On December 18, 2019, the circuit court ordered the parties to submit written closing arguments regarding the remanded issues. The circuit court issued a written order on February 4, 2020, which we summarize in relevant part. Considering factors (1), (2), (3), (7), (8), and (12) of section 504, the property awarded to Sandra in the dissolution judgment was not so substantial to provide significant income for her to live on with the children, so maintenance was appropriate. Using the parties' incomes of $83,079.40 for Keaton and $53,565.31 for Sandra, the combined

gross income was $136,735.71. Forty percent of that amount was $54,694.28. That meant that under the 40% cap, Sandra was entitled to only $1,128.97 per year or $94.09 per month in maintenance per statute. Considering the aforementioned statutory factors, an upward deviation of maintenance was appropriate, to $6,000 per year/$500 per month for 7.28 years from the date of the marriage dissolution. This equated to Sandra receiving 43.5% of the parties' combined gross income. The maintenance was to terminate after 7.28 years unless Sandra filed a motion to extend within 60 days of the maintenance's expiration. Based on the maintenance award, Keaton was to pay $1,355.58 per month in child support.

¶ 10 On March 3, 2020, Keaton filed a motion to reconsider, arguing, *inter alia*, that the circuit court was required to make specific findings of fact for each statutory factor. The circuit court granted Keaton's motion to reconsider in part on June 16, 2020. On July 13, 2020, the circuit court entered an order specifying amendments to its prior order, which largely consisted of discussing the enumerated factors under section 504(a).

¶ 11 We summarize the circuit court's findings. For the first factor, the parties' incomes and property and financial obligations resulting from the marriage dissolution, there were no significant marital assets for Sandra to draw upon to support herself. Keaton made approximately $30,000 more than Sandra, and the evidence showed that Keaton did not pay any child support for the previous eight years, such that Sandra shouldered the entire burden. Therefore, this factor favored Sandra.

¶ 12 The second factor, each party's needs, favored Sandra because the evidence showed that after paying expenses, she had a deficit 20 times that of Keaton. For the third factor, the parties' present and future earning capacities, Sandra was a stay-at-home mother when she resided with Keaton. She was currently a factory worker with no foreseeable room for advancement, whereas

Keaton had a college degree, was in the insurance industry, and had a greater probability of future advancement. The third factor therefore favored Sandra as well.

¶ 13    The fourth factor, any impairment in earning capacity for the party seeking maintenance due to devoting time to domestic duties or delaying or foregoing education or career opportunities due to the marriage, favored Sandra because she was unable to pursue educational or vocational training because she was a stay-at-home mom and then became the sole breadwinner for herself and the children "[u]pon [Keaton's] move to Texas." The fifth factor, any impairment in earning capacity against the person from whom maintenance was sought, also favored Sandra because there was no evidence of an impairment in Keaton's ability to earn money. The sixth factor, the time the party seeking maintenance needs to obtain appropriate education or employment, favored Sandra because she had to raise and support the children.

¶ 14    The seventh factor was the standard of living established during the marriage. The evidence showed that the parties' led a comfortable lifestyle. They lived in a nice house, accumulated a number of investment properties, and Sandra was a stay-at-home mom. The duration of the marriage, factor eight, was significant in that it lasted 12 years and 11 months. The ninth factor was the parties' ages, physical conditions, skills, assets, and liabilities. Both parties were relatively young, with Sandra being 44 and Keaton age 51 at the time of the dissolution. There was no evidence of health issues. The factor favored Sandra because she had only a high school degree whereas Keaton had a college degree. The tenth factor, the parties' sources of income, was neutral because there was no evidence of income beyond the parties' wages. The eleventh factor of tax consequences was likewise neutral. The twelfth factor, the contributions and services the party seeking maintenance made to the education or career of the other spouse, favored Sandra because she stayed at home and raised the children, allowing Keaton to advance his career. Factor 13, any

agreement between the parties, was not applicable, nor were there any additional considerations under factor 14.

¶ 15    The circuit court set the amount of maintenance the same as in its February 4, 2020, order. On the subject of the reason for the upward deviation of maintenance, the circuit court stated:

> "Given its consideration of the factors set forth above, and specifically the facts that [Sandra] was left alone with the Parties['] children for 8 years and was required to provide all of their support, forsaking the ability to advance her education and training that would allow her to become self-sufficient, and the fact that her income and expenses leave her with a monthly deficit 20 times that of [Keaton], and that she has been forced to work a third shift job just to maintain this unequitable standard, the Court finds that an upward deviation of the maintenance award is appropriate ***."

¶ 16    On August 19, 2020, the circuit court entered an order setting child support at the statutory guideline amount of $1285.48 per month. Keaton was responsible for 55% of the children's expenses, and Sandra was responsible for the remaining 45%.

¶ 17    Keaton thereafter filed a motion to reconsider, arguing that the circuit court erred in applying the statutory maintenance factors and that there was no reasonable justification for deviating from guideline maintenance. The circuit court denied the motion on October 26, 2020.

¶ 18    Keaton timely appealed.

¶ 19                                    II. ANALYSIS

¶ 20    We initially note that Sandra has not filed an appellee's brief. In *First Capitol Mortgage Corp. v. Talandis Construction Corp.*, 63 Ill. 2d 128, 133 (1976), our supreme court provided three possible approaches to a situation where the court lacks an appellee brief. First, if justice requires, we may serve as advocate for the appellee and search the record for purposes of sustaining the

circuit court's judgment. Second, we may decide the appeal's merits if the record is simple and the claimed errors are such that we can easily decide them without the aid of an appellee's brief. Third, if the appellant's brief demonstrates *prima facie* reversible error, as supported by the record, we may reverse the circuit court's judgment. *Id.* The second approach applies here.

¶ 21     Turning to the merits, Keaton challenges the circuit court's ruling on maintenance. He argues that the circuit court made an error of law in applying the first factor in section 504(a). 750 ILCS 5/504(a)(1) (West Supp. 2017). That factor consists of "the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the dissolution of marriage." *Id.* The circuit court listed the parties' incomes, stated that there were no significant marital assets for Sandra to use to support herself, and then stated: "In addition, the evidence indicated that [Keaton] did not pay child support for the preceding 8 years and [Sandra] shouldered the entire burden of the couple's children and therefore this factor favors" Sandra. Subsequently, the circuit court stated: "Given its consideration of the factors set forth above, and specifically the facts that [Sandra] was left alone with the Parties['] children for 8 years and was required to provide all of their support *** the Court finds that an upward deviation of the maintenance award is appropriate."

¶ 22     Keaton argues that the court's language clearly shows an attempt to punitively award what the court perceived as unpaid support to Sandra, which is contrary to the statute's language. Keaton cites *Edelstein v. Edelstein*, 82 Ill. App. 3d 574, 577 (1980), where the circuit court declined to award maintenance where the parties were separated and self-supporting for six years before the dissolution of their marriage. The court stated that evidence also indicated that the wife may have intentionally delayed the proceedings until the husband finished his residence and became an

established physician with a substantially higher income. *Id.* Keaton argues that here, the parties were separated for eight years and that he was the one who filed for the marriage dissolution.

¶ 23    Keaton notes that in the hearing on his motion to reconsider, the circuit court stated that "the statute does include consideration of the financial obligations imposed on a party as a result of the marriage." Keaton counsel's replied, "[a]s a result of the dissolution of the marriage," to which the circuit court responded:

"No, no as a result of the marriage, 504(a)(1). And in so doing, there are 15 factors that I'm supposed to consider. The last factor of which, is anything else that the Court feels is just and equitable. And in this instance, although [it] was not the overriding position of the Court it was a consideration of the Court, although the financial obligation imposed on [Sandra] as a part of the marriage in having to care for the children for eight years without any support and the position that it led her to."

Keaton argues that there can be few mistakes of law more obvious than misquoting the law, especially where it leads to an erroneous conclusion. He asserts that there is a significant and meaningful distinction between "all financial obligations imposed on the parties as a result of the marriage" and "all financial obligations imposed on the parties as a result of the *dissolution* of marriage" (emphasis added), the latter of which is the language in section 504(a)(1). See 750 ILCS 5/504(a)(1) (West Supp. 2017). Keaton argues that if the legislature had intended for the circuit court to consider every obligation that resulted from the marriage rather than the divorce, it would have written the statute to state such.

¶ 24    Statutory construction presents a question of law, so we review *de novo* a circuit court's interpretation of maintenance statutes. *In re Marriage of Harms & Parker*, 2018 IL App (5th) 160472, ¶ 24. Keaton is correct that section 504(a)(1) states that the circuit court is to consider

"the income and property of each party, including marital property apportioned and non-marital property assigned to the party seeking maintenance as well as all financial obligations imposed on the parties as a result of the *dissolution of marriage*" (emphasis added) (750 ILCS 5/504(a)(1) (West Supp. 2017)), as opposed to "as a result of the marriage." However, the circuit court duly noted at the hearing on Keaton's motion that the statute provides 15 factors to consider, including "any other factor that the court expressly finds to be just and equitable." *Id.* § 504(a)(14). It was therefore not an error of law for the circuit court to consider the financial obligations imposed on Sandra as a result of being financially responsible for the children for eight years. We additionally note that the circuit court labeled this as a "consideration" and "not the overriding position" in determining maintenance.

¶ 25     Keaton alternatively argues that the circuit court's ruling was an abuse of discretion. He argues that the circuit court misapplied the statutory factors. For the first factor, Keaton repeats his assertion that the court applied this in a punitive manner. For the second factor, Keaton argues that it was misleading for the court to say that Keaton had a monthly deficit that was 20 times that of Sandra, as Sandra's deficit was only $251.79 and his was $12.28. Keaton argues that this difference should not be labeled as a gross discrepancy, especially considering that more than all of Sandra's deficit would be covered by child support. Regarding the third factor, Keaton argues that although Sandra was a stay-at-home mother, they had not resided together for eight years. He also asserts that there was no evidence that she had no prospect of advancement. For the fourth factor, Keaton argues that the circuit court was incorrect that Sandra became the sole breadwinner because he moved to Texas, as the evidence showed that they both lived in Texas and that Sandra abandoned the marriage and moved to Illinois. He also maintains that there was no impairment to Sandra's ability to earn a living, as she was already doing so. For the fifth factor, Keaton agrees that there

was no impairment to his earning potential but argues that this does not support the factor favoring Sandra. Keaton argues that the circuit court analyzed the sixth factor incorrectly because Sandra did not need to acquire education, training, and employment, as she was already earning a "substantial income." He further argues that at the time of the judgment, the children were "all essentially self-sufficient."[1]

¶ 26     For the seventh factor, Keaton argues that because the parties had been living separately for eight years, the standard of living that Sandra enjoyed during the marriage was the one she enjoyed when the case was filed, such that no maintenance was appropriate. Keaton contends that if he is forced to pay maintenance, it will have a significant and unjust effect on his ability to maintain his lifestyle. For the eighth factor, Keaton argues that the duration of the marriage is such that the parties have been living apart significantly longer than they were living together, further making maintenance inappropriate as Sandra has been self-supporting longer than she relied on him for support. For the ninth factor, Keaton maintains that the circuit court overlooked that Sandra was earning a "significant income." Keaton argues that the court's analysis of the remaining factors was consistent with the other factors, and that it found factors 10, 11, 13, and 14 to be neutral or not present.

¶ 27     Keaton argues that although the circuit court referred to the "catch-all" factor 14 during the hearing on his motion to reconsider, its July 13, 2020, order stated that this factor did not apply, and the factor is not meant to clean up mistakes or abuses of discretion by the court. Keaton asserts that the circuit court decided to order punitive maintenance and, after failing to provide its

---

[1] At the time of the marriage dissolution, three of the children were minors.

reasoning both before and after remand of the case, fit its analysis to the conclusion that it wanted to support.

¶ 28    Keaton cites *In re Marriage of Dea*, 2013 IL App (1st) 122213, ¶ 29, where the appellate court held that the maintenance award was not reasonable because it resulted in awarding the spouse maintenance significantly beyond his stated monthly expenses while pushing the payor's obligation beyond her monthly income. *Id.* ¶ 29. Keaton argues that the same reasoning applies here.

¶ 29    Keaton also cites *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶ 30, where the appellate court stated that the four common types of maintenance are permanent maintenance, rehabilitative maintenance for a fixed term, rehabilitative maintenance with a review date, and maintenance in gross. The court held that the evidence did not indicate that the wife was entitled to any of the common forms of maintenance for the time period for which it was awarded. *Id.* ¶ 47. Keaton argues that the maintenance awarded was rehabilitative maintenance with a review date, which requires the recipient spouse to seek the appropriate training and skills to become self-sufficient. He argues that Sandra has already acquired the skills to become self-sufficient, as evidenced by her "substantial salary," and therefore the circuit court's award of maintenance should be reversed, or in the alternative set at the statutory amount of $94.09 per month.

¶ 30    We presume that a circuit court's determinations in awarding maintenance and child support are correct, and we will not reverse its findings as to income or its awards unless the circuit court abused its discretion. *In re Marriage of Lugge*, 2020 IL App (5th) 190046, ¶ 15. A ruling is an abuse of discretion where it is arbitrary, fanciful, or unreasonable, or where no reasonable person would take the same view. *In re Marriage of Gabriel & Samoun*, 2020 IL App (1st) 182710, ¶ 39. Where a party challenges a circuit court's factual findings for a maintenance determination,

we will not reverse those findings unless they are against the manifest weight of the evidence, which occurs when the opposite conclusion is clearly evident or where the court's findings are unreasonable, arbitrary, or not based on the evidence. *In re Marriage of Sturm*, 2020 IL App (4th) 110559, ¶ 3. A circuit court may deviate from statutory maintenance guidelines based on a consideration of the same factors used to determine whether a maintenance award is appropriate in the first place. 750 ILCS 5/504(b-1)(1), (2), (b-2)(2) (West Supp. 2017).

¶ 31     We conclude that the circuit court acted within its discretion in its maintenance award to Sandra. *In re Marriage of Dea* is distinguishable because there the circuit court awarded permanent maintenance of $1,600 per month and failed to consider the amounts that the payee received in social security payments (2013 IL App (1st) 122213, ¶¶ 7, 20), whereas here the circuit court ordered maintenance of just $500 per month for a limited time, specifically 7.28 years, after which there was a potential for an extension. We also note that Keaton was living alone in a three-bedroom duplex whereas Sandra was sleeping on the couch of her two-bedroom apartment so that the children could have the bedrooms, which affects how the circuit court could view the parties' respective monthly expenses.

¶ 32     *In re Marriage of Van Hoveln*, 2018 IL App (4th) 180112, ¶¶ 33-38, is distinguishable because there the wife did not seek retroactive maintenance until the final hearing, which was many years after the filing of the petition for dissolution; the husband had been terminated from his long-term job; and the wife did not work summers and later quit her job and moved in with her boyfriend. Keaton's reliance on that case is also unpersuasive because nothing in section 504 requires the circuit court to assign a label to the maintenance awarded, but rather requires the court to evaluate various factors in determining whether maintenance is appropriate, which the court did

here. *Cf. In re Marriage of Kasprzyk*, 2019 IL App (4th) 170838, ¶¶ 44-45 (time-limited maintenance is not automatically rehabilitative maintenance).

¶ 33    Looking at the first statutory factor, the circuit court noted that Sandra had no significant marital assets from which to support herself, which falls under the broad category of the results of the dissolution of the marriage. As stated, the circuit court did not err in considering that the effects of Sandra being financially responsible for the children for eight years, even if this consideration did not directly fall under factor one. The consideration of this factor also does not equate to a punitive judgment against Keaton. That the circuit court weighed the second factor in Sandra's favor was supported by the evidence, as her monthly deficit after expenses was significantly greater than Keaton's. The same is true for the third and fifth factors, as it is undisputed that Sandra was a stay-at-home mother and then became a factory worker, whereas Keaton has a college degree and works in the insurance industry, which would give him greater prospects for future advancement.

¶ 34    Regarding the fourth and sixth factors, Keaton rightly points out that the circuit court incorrectly stated that he moved to Texas, whereas the evidence showed that the family lived in Texas and that Sandra moved to Illinois with the children. However, the circuit court's substantive findings on this factor were not against the manifest weight of the evidence, as the circuit court highlighted that Sandra was a stay-at-home mother and then became the sole breadwinner for herself and the children, such that she was unable to pursue educational or vocational training.

¶ 35    For the eighth factor, the circuit court could properly consider that Sandra was a stay-at-home mom at the beginning of the marriage and the parties' joint financial situation at the time. Regarding the eighth factor, Keaton points to the parties' long separation, but that does not change the fact that they were married almost 13 years. Keaton argues that the circuit court overlooked

that Sandra was earning what he labels as a "significant income" for the ninth factor, but he earned about $30,000 more than she did in 2017.

¶ 36    After carefully reviewing the circuit court's analysis of the section 504(a) factors, we cannot say that it abused its discretion in determining that maintenance was appropriate and deviating upwards from the guidelines to award Sandra maintenance of $500 per month for 7.28 years, with the maintenance being subject to an extension.

¶ 37                    III. CONCLUSION

¶ 38    For the reasons stated, we affirm the judgment of the circuit court of Du Page County.

¶ 39    Affirmed.