2019 IL App (2d) 180976-U
No. 2-18-0976
Order filed October 22, 2019

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

_____

| | | |
|---|---|---|
| *In re* MARRIAGE OF KEATON SMILEY, | ) ) ) | Appeal from the Circuit Court of Du Page County. |
| Petitioner-Appellant, | ) ) | |
| and | ) ) | No. 16-D-678 |
| SANDRA SMILEY, | ) ) ) | Honorable Robert E. Douglas, |
| Respondent-Appellee. | ) | Judge, Presiding. |

_____

JUSTICE BRIDGES delivered the judgment of the court.
Justices McLaren and Birkett concurred in the judgment.

**ORDER**

¶ 1    *Held*:  (1) The circuit court erred in calculating the amount of guideline maintenance and child support using the parties' base incomes rather than their gross incomes; and (2) the circuit court's finding that petitioner dissipated marital funds was not against the manifest weight of the evidence.  Therefore, we affirmed in part, reversed in part, and remanded with instructions.

¶ 2    Petitioner, Keaton Smiley, appeals from the judgment dissolving his marriage to respondent, Sandra Smiley.  He contends that the circuit court erred in (1) awarding maintenance to Sandra without making specific findings of fact as to each relevant factor in section 504(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/504(a) (West 2018));

(2) determining the income of the parties for purposes of calculating guideline maintenance and child support; and (3) finding that Keaton dissipated $15,703 of marital assets. For the following reasons, we affirm in part, reverse in part, and remand the cause with instructions.

¶ 3                                I. BACKGROUND

¶ 4      Keaton and Sandra were married on April 25, 2003. They had three children together and, one year prior to the marriage, Keaton adopted Sandra's child from a previous relationship. The parties resided together in Texas until their separation in 2008, when Sandra relocated with the children to Illinois. After an eight year separation, on April 7, 2016, Keaton filed a petition for dissolution of marriage in Illinois.

¶ 5      A trial was held over two days in July 2018. Keaton testified that he was employed as an insurance premium auditor at CNA Insurance where he earned a base salary of $78,000 per year, plus a bonus based on his profitability. Including his bonus, he earned a gross income of $83,079 in 2017. Keaton had limited contact with the children during the parties' extended separation, in that he had only telephonic communication with the younger children and occasional in-person visitation in Texas with the oldest child. Commencing in 2017, Keaton began to travel to Illinois every other week to exercise parenting time in accordance with the recommendations of the guardian *ad litem*. Keaton withdrew approximately $15,700 from his 401(k) in August 2017 after he ceased working for his former employer, Liberty Mutual Group. He testified that he withdrew the funds to pay for various obligations, including household expenses, child support, legal fees, and travel-related expenses to see the children in Illinois.

¶ 6      Sandra testified that she was living in a two-bedroom apartment in Carol Stream, Illinois with the minor children. She often slept on the couch because the children occupied both bedrooms. She worked "third shift," from 11 p.m. to 7:30 a.m., as a machine operator at Johnson

Controls. Her base pay was approximately $33,000 in 2017, but she earned additional pay for overtime work and night shift premiums. She worked third shift so that she could drive her children to their extracurricular activities and spend time with them, and she voluntarily "put in" for overtime to "keep up with [her] bills." She testified that she did not want to work third shift, but she did so in order to earn additional money. She could apply for the first shift at her job, where the hours would be from 7 a.m. to 3:30 p.m. Sandra's 2017 W-2 reflected that she earned $53,656.13 that year.

¶ 7 The circuit court entered a judgment for dissolution of marriage on August 19, 2018. It also issued a letter opinion explaining its decision, which was incorporated into the judgment. Pertaining to maintenance, the circuit court stated that it had considered the relevant statutory factors in section 504(a) of the Act, and it found that "[t]he property awarded to Sandra is not so substantial as to provide significant income for her to live on with the children," such that maintenance was appropriate. In setting the amount and duration of Keaton's maintenance obligation, the court found that Sandra's base salary was $33,156 per year, but it acknowledged that she earned "approximately $53,000" in 2017 because she received shift premiums for working the third shift. The court found that "Sandra is not required to work a third shift job [because] *** it has her sleeping during much of the time when the children are awake." Regarding Keaton, the circuit court noted that his base salary was $78,358 per year, but that he earned "approximately $83,000" in 2017 when his bonus was included. Utilizing each party's base income, the circuit court ordered Keaton to pay guideline maintenance of $954.13 per month for 7.28 years. Using the income shares approach to calculating child support, the court also awarded Sandra $1,220.59 per month in child support. The judgment provided that the amount of maintenance and child support were to be "trued-up quarterly" based on the "actual

earnings" of the parties. Finally, the court found that Keaton dissipated $15,703 and ordered him to pay Sandra half that amount, as well as ordered that the marital assets be divided equally. Keaton filed a motion to reconsider, but the court denied those portions of the motion seeking reconsideration on the issues of maintenance, child support, dissipation, and the division of property. Keaton timely appealed.

¶ 8                                     II. ANALYSIS

¶ 9      We begin by addressing Keaton's second claim of error, as the circuit court's determinations regarding each party's income necessarily affects (1) whether an award of maintenance was warranted in the first place (see 750 ILCS 5/504(a)(1) (West 2018) (requiring courts to consider "the income and property of each party" in determining whether maintenance is appropriate)) and (2) the accuracy of Keaton's guideline child support obligation.

¶ 10     Keaton contends that the circuit court erred as a matter of law in calculating guideline maintenance using the parties' base salaries rather than their gross incomes as required by section 504(b-1)(1)(A) of the Act (750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017)), as well as in using these figures to compute guideline child support. See 750 ILCS 5/505(B) (West 2018) (defining net income for purposes of calculating child support as "gross income minus either the standardized tax amount *** or the individualized tax amount***."). He stresses that the court's letter opinion makes clear that the awards of maintenance and child support were intended to conform to statutory guidelines, but the awards failed to do so. According to Keaton, the true earnings of the parties were not in dispute, but the court nevertheless refused to consider each party's actual income in calculating guideline maintenance and child support. He argues that there is no provision in the Act that "allows the trial court to consider a party's income as that person wishes they were situated," and he asserts that the judgment incentivizes Sandra to reduce

her income. Had the court considered actual gross incomes of the parties, Keaton asserts that his maintenance obligation would be "essentially zero" and his child support payment would be significantly lower.

¶ 11    Sandra responds that Keaton's argument is flawed because it omits the circuit court's finding that she "is not required to work a third shift job" because it would have her "sleeping during much of the time when the children are awake." She also draws our attention to the court's oral statements in denying Keaton's motion to reconsider, wherein it stated:

> "I also opined in [the letter opinion] that [Sandra] shouldn't have to be working third shift in order to support her children, just like I didn't say [Keaton] should have to go out and get another job so he can make more money to give to the children. It's an extraordinary event to work third shift, [and] *** [Sandra] indicated that that is not the only [shift] she can get. The only reason she took it was because she needed additional money to try to support her children. And she indicated in [her] testimony *** that she really didn't want to work on third shift."

Sandra also responds that the quarterly true-up provision included in the court's letter opinion "would address any concerns regarding inequity relating to the parties' respective actual gross incomes."

¶ 12    At the outset, we note that the parties disagree on the applicable standard of review for this issue. Generally, a trial court's determination of maintenance is presumed to be correct. *In re Marriage of Foster*, 2014 IL App (1st) 123078, ¶ 118. The amount of a maintenance award lies within the sound discretion of the trial court, and we will not reverse that decision absent an abuse of discretion. *In re Marriage of Brill*, 2017 IL App (2d) 160604, ¶ 26. An abuse of discretion occurs where the trial court's findings are arbitrary or fanciful or where no reasonable

person would agree with the court's position. *Id.* However, we agree with Keaton that this issue relates squarely to how the circuit court interpreted the meaning of a statute—namely section 504(b-1)(1)(A) of the Act (750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017).[1] Because statutory construction is a question of law, we review *de novo* the court's interpretation of the pertinent statutes. *Brill*, 2017 IL App (2d) 160604, ¶ 40. As such, we review this issue *de novo*.

¶ 13 In construing a statute, our primary goal is to ascertain and give effect to the intent of the legislature, which is best evidenced by the unambiguous language of the statute. *In re Marriage of Turk*, 2014 IL 116730 ¶ 15. "Where the language of a statute is clear and unambiguous, a court must give it effect as written, without reading into it exceptions, limitations[,] or conditions that the legislature did not express." (Internal quotation marks omitted). *Garza v. Navistar International Transportation Corp.*, 172 Ill. 2d 373, 378 (1996).

¶ 14 Where the court has determined that an award of maintenance is appropriate, section 504(b-1)(1) sets forth guidelines to be applied in setting the amount and duration of the award. The guideline provides that the amount of annual maintenance "shall be calculated by taking 30% of the payor's gross annual income minus 20% of the payee's gross annual income." 750 ILCS 5/504(b-1)(1)(A) (West Supp. 2017). The award is subject to a statutory cap, however, in that the amount of maintenance, "when added to the gross income of the payee, may not result in the payee receiving an amount that is in excess of 40% of the combined gross income of the parties." *Id.* In the alternative, the court may award maintenance that is not in accordance with the guidelines, but "it shall state in its findings the amount of maintenance (if determinable) or

---

[1] We note that section 504 was amended subsequent to the entry of the judgment. See 750 ILCS 5/504 (West 2018); Pub. Act 100-923 (eff. Jan 1, 2019).

duration that would have been required under the guidelines and the reasoning for any variance from the guidelines." 750 ILCS 5/504(b-2)(2) (West 2018).

¶ 15    Under the plain and unambiguous language of section 504(b-1)(1)(A) of the Act, the amount of guideline maintenance is calculated by inputting the gross annual income of both the payor and payee into a mathematical formula, subject to the statutory cap.  Section 504(b-3) defines the term "gross income" to mean "all income from all sources, within the scope of that phrase in [s]ection 505 of this Act ***."  750 ILCS 5/504(b-3) (West 2018).  Section 505 of the Act governs child support awards in dissolution of marriage proceedings.  It defines "gross income" as "the total of all income from all sources," subject to certain enumerated exceptions that neither party argues apply here.  750 ILCS 5/505(a)(3)(A) (West 2018).

¶ 16    The evidence adduced at trial, most notably the parties' W-2 forms, reflect that Keaton and Sandra earned, respectively, $83,079.40 and $53,656.31 in 2017.  The court acknowledged this uncontested evidence in its letter opinion, wherein it noted that Sandra's "annual salary" was "approximately $53,000" and Keaton's "annual salary" was "approximately $83,000" per year.  Nevertheless, the circuit court did not use these figures in its maintenance calculation, but instead relied on the "base annual gross income" of each party.

¶ 17    In calculating Sandra's maintenance award, the circuit court found that 30% of Keaton's base salary ($78,358) was $23,507.40, and that 20% of Sandra's base salary ($33,156) was $6,631.20.  In seemingly applying the statutory formula for guideline maintenance, the court subtracted 20% of Sandra's base pay from 30% of Keaton's base, yielding a preliminary annual maintenance award of $16,876.20.  The court acknowledged the impact of the 40% statutory cap established by section 504(b-1)(1)(A) and noted that the preliminary maintenance award "would give Sandra in excess of 40% of the parties['] combined gross income" when added to Sandra's

income. As such, the circuit court subtracted Sandra's base income ($33,156) from 40% of the parties' combined "base annual gross income" ($111,514), or $44,605.60, resulting in an annual maintenance award of $11,449.60, or $954.13 per month.

¶ 18 As its letter opinion makes clear, the circuit court plainly did not determine the maintenance award by utilizing "all income from all sources" in its maintenance calculation as required by section 504 of the Act, nor did it properly calculate the parties' net income under section 505(a)(1.5)(A) of the Act for purposes of computing Keaton's child support obligation. See 750 ILCS 5/505(B) (West 2018) (defining net income as "gross income minus either the standardized tax amount *** or the individualized tax amount***."). Instead, the circuit court relied on what it called the "base annual gross income" of the parties and, in doing so, it impermissibly disregarded not just the overtime pay and shift premiums earned by Sandra, but also Keaton's bonus.

¶ 19 While we are cognizant that the circuit court found that Sandra was "not required to work a third shift job," it nevertheless erred because it calculated the award as if she were not currently employed in that capacity. Indeed, her testimony established that she continued to earn income from shift premiums up to the time of trial, and she had "always" worked third shift. Although Sandra testified that she was "able to apply for the first shift," she did not testify that she either intended to do so or that her employer was likely to approve the request if made. Because the evidence established conclusively the gross annual income of the parties at the time of judgment, the circuit court erred as a matter of law in failing to calculate guideline maintenance using these figures. We note briefly that a court may deviate from the maintenance guidelines, but in doing so it "shall state in its findings the amount of maintenance *** that would have been required under the guidelines and the reasoning for any variance from the guidelines." 750 ILCS 5/504(b-

2)(2) (West 2018).  Here, the court made no such findings, and its letter opinion makes clear that it intended to award guideline maintenance as opposed to an award not in accordance with the guidelines.

¶ 20    Because the circuit court misapprehended the income of both parties, we accordingly reverse and remand for a new hearing to determine Keaton's child support obligation using the gross incomes of the parties at the time of hearing, subject to any deviations, and to determine whether an award of maintenance is appropriate after consideration of "the income and property of each party," in addition to all other relevant factors in section 504(a) of the Act.  Because of this resolution, we need not address directly Keaton's first claim of error that the court failed to make specific findings of fact regarding its reasoning for awarding maintenance with reference to all relevant factors in section 504(a).  Nevertheless, the court should be mindful on remand of the statutory requirement that it "make specific findings of fact" regarding "its reasoning for awarding or not awarding maintenance and *shall include references to each relevant factor set forth in subsection (a) of this section.*" (Emphasis added.)  750 ILCS 5/504(b-2)(1)) (West 2018).

¶ 21    We next address Keaton's ancillary argument regarding child support because it is likely to arise on remand.  Keaton contends that the circuit court erred in calculating guideline child support without subtracting from his net income the monthly installments he pays towards a child support arrearage.  At trial, Keaton testified that he was paying a child support arrearage pursuant to a Nebraskan court order related to an adult son from a prior relationship, but he did not know how much the total arrearage was.  Keaton attached to his motion to reconsider an order entered in September 1999 in Nebraska establishing his paternity of a child born in August 1997 and ordering him to pay $593 monthly in child support until the child reached majority.

¶ 22    The circuit court declined to apply the multi-family discount, reasoning that Keaton's payments were merely installments on an arrearage judgment regarding his adult son rather than current support for a child.  On appeal, Keaton does not cite any statute in this portion of his brief, but it appears that Keaton's argument is that he is entitled to the multi-family adjustment set forth in section 505(a)(3)(F)(I) of the Act.  It provides:

"(I) Multi-family adjustment.  If a parent is also legally responsible for support of a child not shared with the other parent and not subject to the present proceeding, there shall be an adjustment to net income as follows:

(i) Multi-family adjustment with court order.  The court shall deduct from the parent's net income the amount of child support actually paid by the parent pursuant to a support order unless the court makes a finding that it would cause economic hardship to the child."  750 ILCS 5/505(a)(3)(F)(I)(i) (West 2018).

¶ 23    In construing section 505(a)(3)(F)(I), we must ascertain and give effect to the legislature's intent.  *In re Marriage of Benink*, 2018 IL App (2d) 170175, ¶ 26.  The best indicator of legislative intent is the language of the statute, given its plain and ordinary meaning. *In re D.F.*, 208 2d 223, 229 (2003).  Because this ancillary issue likewise involves the interpretation of a statute, we must review the circuit court's determination *de novo*.

¶ 24    Keaton's argument is misguided and finds no support in section 505(a) of the Act. Section 505(a)(3)(F)(I) governs adjustments to net income in multi-family situations.  It is applicable "[i]f a parent is also legally responsible for support of a child not shared with the other parent and not subject to the present proceeding."  750 ILCS 5/505(a)(3)(F)(I) (West 2018).  As pointed out by Sandra, section 505(a) defines the term "child" for purposes of section 505 as "any child under age 18 and any child age 19 or younger who is still attending high school."  750

ILCS 5/505(a) (West 2018). The record and Keaton's own testimony confirm that the payments Keaton contends the circuit court should have subtracted from his net income are not for the support of a "child," as that term is defined in the Act. Rather, as noted by the court, the payments are installment payments for an arrearage judgment stemming from Keaton's non-payment of timely child support for his son from a prior relationship who, at the time of trial, was 21 years old and attending college. Because Keaton was not supporting a child not shared with Sandra when the judgment was entered, his net income is not subject to the multi-family adjustment contemplated in the Act, and the circuit court did not err in declining to subtract the arrearage installment payments from Keaton's net income in computing his child support obligation.

¶ 25    Keaton's final argument on appeal is that the circuit court abused its discretion in finding that he dissipated $15,703 of marital assets. He argues that even though he was barred from testifying or presenting evidence concerning his credit card use, his testimony regarding his repeated travel to Illinois to exercise parenting time was sufficient to establish that the funds were spent for marital purposes. Dissipation occurs when a spouse uses marital assets for his or her benefit for purposes unrelated to the marriage at a time that the marriage is undergoing an irreconcilable breakdown. *In re Marriage of O'Neill*, 138 Ill. 2d 487, 497 (1990). Whether a given course of conduct is dissipation depends on the facts of each particular case. *In re Marriage of Drummond*, 156 Ill. App. 3d 672, 683 (1990). "The spouse charged with dissipation of marital funds has the burden of showing, by clear and specific evidence, how the marital funds were spent." *In re Marriage of Tietz*, 238 Ill. App. 3d 965, 983 (1992). General and vague statements that the funds were spent on marital expenses or to pay bills are not sufficient to avoid a finding of dissipation. *In re Marriage of Toole*, 273 Ill. App. 3d 607, 615 (1995). In making

its decision as to a claim of dissipation, the trial court must determine the credibility of the spouse charged with dissipation. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 830 (1994). A trial court's determination of whether a spouse dissipated marital assets will not be disturbed on appeal unless it is against the manifest weight of the evidence. *Foster*, 2014 IL App (1st) 123078, ¶ 107. A decision is against the manifest weight of the evidence only where the "opposite conclusion is clearly evident or the finding is arbitrary, unreasonable, or not based on the evidence." *In re Marriage of Romano*, 2012 IL App (2d) 091339, ¶ 44.

¶ 26    We conclude that the circuit court's finding of dissipation was not against the manifest weight of the evidence. The record confirms that Sandra filed a notice of intent to claim dissipation asserting that Keaton withdrew $15,703 from his 401(k) retirement account during the divorce and gradually disposed of these funds. In response, Keaton denied dissipating marital funds and asserted as an affirmative defense that his "salary ha[d] become insufficient to cover his living expenses, travel costs to visit Illinois to reunite with his children and funds necessary to litigate this case." Keaton asserted that the appropriate use of the funds could "be substantiated by [his] bank statements." Sandra thereafter filed a motion *in limine* seeking to bar evidence and testimony regarding plaintiff's credit card use due to his failure to tender the statements during discovery, which the circuit court granted. At trial, Keaton testified that he withdrew the funds from his 401(k) account "to be able to basically pay [his] obligations," including household expenses, legal fees, and travel-related expenses to see his children during the divorce, including airfare, hotels, and vehicle rentals. He further testified that he regularly flew from Texas to Chicago to exercise parenting time, and the tickets ranged in price from $280 to $535. During the trips, he would stay for two nights at either a Marriott or Hilton hotel for $149 per night, and he would also rent a car for $75 per day.

¶ 27 Because Keaton points only to his own trial testimony to argue against dissipation, his argument necessarily depends on his credibility. In its letter opinion, the circuit court found specifically that there was insufficient credible testimony that the $15,703 that Keaton withdrew from his 401(k) was applied to marital expenses, such that "said amount was dissipated by Keaton." Although it was uncontested that Keaton traveled to Illinois frequently during the divorce, the circuit court did not find credible his testimony regarding how he spent the funds that he withdrew from his 401(k) and, due to Keaton's own failure to comply with discovery, no documentary evidence to support this testimony was presented to the circuit court. We must give the circuit court's decision great deference because it, having heard and observed the witnesses, was in a better position to evaluate the witnesses' credibility and weigh the evidence. It is well-established that the reviewing court will not substitute its judgment for that of the finder of fact "on matters of credibility of a witness, weight of evidence and the inferences drawn from the evidence" unless the opposite conclusion is evident from the record. *Northwestern Memorial Hospital v. Sharif*, 2014 IL App (1st) 133008, ¶ 26. Because the opposite conclusion is not clearly evident, nor is "the finding arbitrary, unreasonable, or not based on the evidence," we conclude that the circuit court's finding of dissipation was not against the manifest weight of the evidence.

¶ 28 Tangentially, Keaton briefly argues that the circuit court erred by failing to specify in the judgment which assets and liabilities it deemed marital, as opposed to nonmarital property, and failed to specify the values thereof. Sandra responds that the court was not required to classify the assets as either marital or nonmarital because there was no evidence or testimony as to the existence of any nonmarital assets or liabilities.

¶ 29    The disposition of property and debts in a dissolution of marriage proceeding is governed by section 503 of the Act (750 ILCS 5/503 (West 2018)).  All property owned by the parties in a dissolution proceeding belongs to one of three estates—the husband's estate, the wife's estate, or the marital estate.  *In re Marriage of Werries*, 247 Ill. App. 3d 639, 641-42 (1993).  The Act defines "marital property" as "all property, including debts and other obligations, acquired by either spouse subsequent to the marriage," subject to certain exceptions.  750 ILCS 5/503(a) (West 2018).  Before a court may dispose of property upon the dissolution of marriage, it must determine whether the property is marital or nonmarital.  *In re Marriage of Henke*, 313 Ill. App. 3d 159, 166 (2000).  "The court shall make specific factual findings as to its classification of assets as marital or non-marital property, values, and other factual findings supporting its property award."  750 ILCS 5/503(a) (West 2018).

¶ 30    Here, in apportioning the property of the parties, the judgment merely states that "all the marital assets[,] including retirement assets[,] shall be divided equally between the parties," and that "all marital debt will be divided equally between the parties."  It contains no reference to any nonmarital property, nor does it find that there was no nonmarital property at issue.  Moreover, it makes no finding as to the approximate value of any asset.  In this regard, we agree with Keaton that the property division ordered by the court is not sufficiently specific such that it, in its present form, does not conform to section 503(a) of the Act.  On remand, we direct the circuit court to "make specific factual findings as to its classification of assets as marital or non-marital, values, and other factual findings supporting its property award."  See 750 ILCS 5/503(a) (West 2018).  If, after consideration of all of the evidence, the court determines that no property belongs either to Keaton's nonmarital estate or Sandra's nonmarital estate, such that all of the property at issue is marital, the judgment shall so state.

¶ 31                                    III. CONCLUSION

¶ 32    For the reasons stated, we affirm the circuit court's finding on dissipation, but we reverse its determination on the amount of maintenance and child support, and we remand for a new hearing to determine Keaton's child support obligation, whether an award of maintenance is appropriate, and to set forth the required findings under sections 504(b-2) and 503(a) of the Act.

¶ 33    Affirmed in part and reversed in part.

¶ 34    Cause remanded.